COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-398-CR

PATRICK WILLIAM MURRY,                                                    APPELLANT 
A/K/A PATRICK MURRY 

V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM THE 
213TH DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
        Patrick William Murry appeals from his conviction by a jury of the offense 
of burglary of a habitation with the intent to commit assault. The jury assessed 
appellant’s punishment at nine years’ confinement. In his sole point on appeal, 
appellant complains that the evidence is factually insufficient to support the 
appellant’s conviction. We affirm the trial court’s judgment. 
 
FACTUAL BACKGROUND 
        Appellant is the father of Jandell Echols’s daughter Kalia Murry, who was 
ten months old at the time of the offense. Jandell and Kalia lived with Jandell’s 
mother, Deborah Nickerson. Appellant and Jandell began dating in February 
2001 and continued to be romantically involved on and off again until they 
broke up in June 2002. Jandell lived with appellant in an apartment from 
March through June 2002, but her primary residence was her mother’s home. 
However, Jandell’s relationship with her mother has at times been strained 
because Nickerson disapproves of Jandell’s relationship with appellant. 
        Although appellant knew that Nickerson disapproved, prior to June 24, 
2002, appellant often went to see Kalia at Nickerson’s house. Appellant 
usually arrived for visitation sometime after 7:00 a.m. on weekdays because he 
knew that Nickerson left for work at approximately 6:45 a.m. every morning. 
Appellant testified that he went to Nickerson’s home the morning of June 24, 
2002, upon Jandell’s invitation. Jandell admits that she and appellant argued 
on the phone the night before, but she denied inviting appellant to the house. 
Nickerson never consented to appellant’s entry into her house. 
        When appellant arrived at Nickerson’s house at approximately 7:00 a.m. 
on June 24, 2002, he knocked on the door, but received no answer. Jandell 
and Kalia were asleep in Tristan’s room near the front of the house. Tristan is 
Jandell’s sister who also lived there. In response to the knocking on the front 
door, Tristan went to the door, looked through the peephole, and saw appellant 
standing outside. Tristan returned to the bedroom and told Jandell that it was 
appellant. Jandell instructed her not to let him in. 
        Appellant then went to Tristan’s window at the front of the house and 
knocked on it demanding that he be let in. The sisters continued to ignore 
appellant’s demands to let him in, so he went to the back bedroom window 
where Jandell usually slept and began banging on it. Tristan and Jandell both 
testified that in addition to demanding entry, appellant also threatened to beat 
up Jandell. Appellant denied that he made any threats at this time. 
        Frustrated by the sisters’ nonresponsiveness, appellant finally lost his 
temper and threw a brick through the back bedroom window, breaking it. Still 
in the front bedroom, the sisters heard the crash from the broken window and 
ran toward the front door. 
        The testimony conflicts as to whether appellant actually entered the 
house through the back window or ran around the house to the front yard. 
Tristan testified that her sister, carrying her baby, ran to the front door ahead 
of her. As Tristan reached the front door, she looked back toward the back 
bedroom and saw appellant climbing through the window. She asked him what 
he was doing there. In response, appellant demanded to know where Jandell 
was and threatened to assault Jandell. 
        Jandell’s testimony corroborated her sister’s account of what happened. 
Jandell testified that although she did not actually see the appellant climb 
through the window into the house, she heard him come through the window. 
Jandell further testified that in addition to being told by her sister that appellant 
was inside the house, she also saw appellant in the house shortly after he 
climbed through. 
        Appellant admitted that he broke the bedroom window, but denies he 
entered the home, or put any part of his body through the window. According 
to appellant, after breaking the window, he saw the sisters run toward the front 
door, so he ran out the side yard to catch up with Jandell in the street. 
        Once in the street, appellant grabbed Jandell by the hair, and she fell or 
was thrown down onto the ground. Appellant grabbed the baby and began 
kicking and throwing Jandell’s head against the concrete. When neighbors 
began gathering at the scene, appellant stopped the assault, put the baby inside 
the front door of the house, and ran away. 
        Davette Jackson, a neighbor, testified that Tristan ran to her house to get 
help. When Jackson went outside, she saw appellant beating Jandell’s head 
against the concrete. Jackson did not see appellant enter or leave the home. 
Similarly, another neighbor, April Diaz, looked out her bedroom window and 
saw appellant jumping up and down on Jandell’s head. Like Jackson, Diaz did 
not see appellant enter or leave the house prior to the assault. 
        The police arrived on the scene shortly after the assault. Officer J.D. 
Hopper of the Fort Worth Police Department testified to what he saw at the 
scene and inside the home. He stated that he saw that the back bedroom 
window was knocked out and that glass was lying on the floor inside the 
window. Officer Hopper noted that the location of the glass was consistent 
with the window being broken “in” instead of someone going “out” through it. 
He also saw that the furniture in front of the window was knocked down. A 
few hours later, Officer Hopper located appellant and took him into custody. 
Once in custody, appellant admitted to committing the assault and explained 
that he had been to the house to see his daughter. He stated that he had never 
entered the house prior to putting the baby inside the front door. 
        At trial, the jury found appellant guilty of the offense of burglary of a 
habitation with the intent to commit assault. 
STANDARD OF REVIEW
        Appellant’s sole point on appeal complains that the evidence is factually 
insufficient to support his conviction. In reviewing the factual sufficiency of the 
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000); Clewis v. State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App.
1996). Evidence is factually insufficient if it is so weak as to be clearly wrong
and manifestly unjust or the adverse finding is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. 
Therefore, we must determine whether a neutral review of all the evidence,
both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the verdict, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Id. 
In performing this review, we are to give due deference to the fact finder’s
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. We may not substitute
our judgment for that of the fact finder’s. Johnson, 23 S.W.3d at 12. 
Consequently, we may find the evidence factually insufficient only where
necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
        To make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d at 
12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
DISCUSSION
        Appellant complains that the evidence is factually insufficient to support 
his conviction because the State failed to show that he actually entered the 
home on June 24, 2002. A conviction for burglary with intent to commit 
assault requires a showing of entry into a habitation, building, or part of a 
building not open to the public, without the effective consent of the owner, 
with the intent to commit a felony, theft, or assault. Tex. Penal Code Ann. § 
30.02(a) (Vernon 2003). For the purposes of penal code section 30.02, 
"enter" means to intrude any part of the body or any physical object connected 
with the body. Id. § 30.02(b). Appellant says there was no entry. 
        Appellant admits knocking out the bedroom window with a brick and 
assaulting Jandell; however, he denies entering the house prior to the assault. 
Thus, appellant contends that he is only guilty of assault and that his burglary
conviction cannot stand. 
        Appellant points out that no witnesses at the scene were able to say 
whether appellant came from inside the house except for Tristan, who testified 
that appellant entered the home prior to placing the baby inside the front door. 
Appellant states that his version of events never wavered and that his 
testimony so outweighs the testimony of Tristan and Jandell as to undermine 
confidence in the verdict or the proof of guilt. 
        Contrary to appellant’s assertions, ample evidence exists to support the 
burglary conviction. Appellant incorrectly states that Jandell’s testimony was 
based solely upon Tristan’s hearsay statements. 
 

 However, appellant ignores 
part of Jandell’s testimony where she stated that she actually saw appellant
inside the house before she ran out the front door, even though she did not see
him come in. Jandell’s testimony is corroborated by Tristan’s testimony. 
However, the only corroborating evidence that appellant points to is Officer
Hopper’s testimony that appellant denied entering the house prior to the
assault. Even so, Officer Hopper could only testify as to appellant’s statements
and not from any personal observation.
        Officer Hopper’s testimony actually provides evidence of physical entry 
into the home. While at the home, he observed that the broken glass from the 
bedroom window was consistent with being broken in when someone climbed
in through it. Additionally, he noted that furniture in the room was knocked
over. Appellant testified that the window broke, and the large shelf sitting in
front of the window fell over when he threw the brick through the window. 
        After a neutral review of all the evidence, we can say that it was not so 
weak that it would undermine the confidence in the verdict.
 


        In conclusion, we hold that the evidence in this case is factually sufficient 
to support a finding that appellant entered the house prior to committing the 
assault and did so with the intent to commit assault. Accordingly, we overrule 
appellant’s sole issue and affirm the trial court’s judgment. 

                                                                  PER CURIAM 
 
PANEL F:   LIVINGSTON, HOLMAN, and GARDNER, JJ. 
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: October 2, 2003